Avram E. Frisch, Esq.
The Law Office of Avram E. Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------------------- x

**DEVI RAJSHRI SETHUMADHAVA MENON**

                                                      Docket No. 2:21-cv-08384-ES-JBC

                        Plaintiff,

                - against -

**WARD CORBETT AND CATALYST PARTNERS MANAGEMENT LLC**

                        Defendant.

---------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**

1. **Introduction**

This memorandum of law is in support of the Plaintiff's renewed motion for default judgment, and is submitted in accordance with the Court's Letter Order of June 6, 2024 and subsequent text order of February 5, 2025. This matter arises from the fraudulent conduct of the Defendants in seeking funds from the Plaintiff for an investment in a fund supposedly operated by Defendant Catalyst Partners. Mr. Corbett was Plaintiff's boyfriend at the time of the transaction, and pressured Plaintiff into making the investment. Despite being told on several occasions that she was not especially interested in investing and that the funds were important to her financial condition, she eventually relented and invested with her boyfriend.

After the investment, the Plaintiff never received a single statement, no evidence that any trades had been made or that she was in fact invested at all. Corbett simply ceased responding, and failed to ever return the funds. It was at this point that the action was commenced, seeking the return of the funds that were "invested" along with certain charges on Plaintiff's American Express card that were made on behalf of Corbett with his agreement that they would be repaid. At this time, the Plaintiff is seeking default judgment on the following counts: Conversion; Common Law Fraud and breach of contract. At this time, the Plaintiff does not seek judgment on the other counts, as recovery on those counts would be duplicative of the fraud, conversion and breach of contract claims. Furthermore, Plaintiff is not pursuing judgment on the American Express charges incurred by Mr. Corbett.

2. **Factual Background**

As set forth in the Amended Complaint, Plaintiff, Devi Rajshri Sethumadhava Menon is an individual who resided in Jersey City, New Jersey. Am. Compl. ¶5.[1] Ms. Menon and Mr. Corbett began dating in 2019. Am. Compl. ¶8. By July 2019, he was seeking an investment from her in his hedge fund, the Defendant Catalyst Partners. Am. Compl. ¶9. Ms. Menon was aware that Mr. Corbett lived in New York State, and he had represented that his residence was in New York City. Am. Compl. ¶6, 10, After commencing this action, Ms. Menon learned that Mr. Corbett actually resided with his mother in Mount Vernon, New York[2]. Menon Decl. at ¶3-4. Plaintiff understands that Corbett is the principal of Catalyst and it is his alter ego. Am. Compl. ¶6-7.

Notably, Corbett never invited Ms. Menon to his home or apartment, and they always met in Jersey City. Am. Compl. ¶10 After dating for several months, in July 2019, Corbett begain pressuring Ms. Menon to invest with his "hedge fund" which turned out to be Defendant Catalyst. Am. Compl. ¶9. During the course of this litigation, Menon discovered that Mr. Corbett maintained other romantic relationships with the purpose of defrauding other women out of funds for his fake hedge fund. Menon Decl. at ¶4.

Initially, Ms. Menon resisted investing in Corbett's fund, explaining to him that she had invested funds with other former boyfriends and that it had a detrimental affect on her relationships and that funds were tight and she was nervous about losing her investment. Am. Compl. ¶11-20. Mr. Corbett continued to pressure her over the next several months. Ibid. He used his knowledge of past scams to which Ms. Menon had fallen victim to prey on her and convince her that this was a safe investment. Am. Compl. ¶15. He indicated that the funds would be safe, but never revealed the true nature of the investment he was proposing (in all likelihood, there was no investment at all). Am. Compl. ¶ 19-28; 33-36. Unable to resist the pressure, Ms. Menon ultimately gave in and wired the first sum of $10,000 on September 23, 2019 and ultimately wired a total of $100,000.00. Am. Compl. ¶21.

---

[1] Ms. Menon has relocated to Bayonne, NJ during the course of this action. Menon Decl. at ¶10.
[2] Mr. Corbett's mother died during the pendency of this action. Plaintiff is no longer aware of his

After obtaining the funds, Corbett failed to provide any information about what occurred with the funds, where they were invested, or any account statement to demonstrate that the funds were earning anything. Am. Compl. ¶23-28. After being evasive, on January 16, 2020, Corbett estimate that after a year, the investment would have earned 11%. Am. Compl. ¶ 23. On February 4, 2020, Mr. Corbett texted that "all is well" with the investment, but again without any details. Am. Compl. ¶ 24. On March 6, 2020 Corbett claimed that the investment was doing great because he "can short the market" and that he had been "waiting for this shorting opportunity." Am. Compl. ¶ 25. No further information was provided, and Ms. Menon never obtained a penny back. Am. Compl. ¶26-28; 35-36; 48.

The total balance owed by Corbett is the $100,000 investment he solicited. Am. Compl. ¶21; 28. Catalyst is also liable for the $100,000 investment submitted to it by Ms. Menon. Plaintiff is also entitled to punitive damages due to the absolutely willful and wanton conduct of Mr. Corbett and the Court should enter judgement granting punitive damages as well.

### 3. Procedural History

This action was commenced by Plaintiff on April 6, 2021, and alleged 7 counts against the Defendants. The first count was under a securities fraud theory, in violation of Section 10(b) of the Securities and Exchange Act of 1934. This cause of action arises under Federal law, and was predicated on the fact that Mr. Corbett made numerous misrepresentations about the nature of the investment (if any actual securities were ever even purchased). In fact, a review of the website of Catalyst at the time of the "investment" indicates it is a fund with a "long only strategy" while Corbett claimed that he was waiting for shorting opportunities. Furthermore, Corbett used various strategies to induce the "investment" and most of them were false, considering that the funds were never invested and were simply stolen by Corbett.

The Second Count alleged violations of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 et seq. due to various fraudulent statements made by Corbett. The third count was for common law conversion as the funds were simply stolen by Corbett and Catalyst. The Fourth Count sought an accounting from the Defendants, owing to their breach of their fiduciary duty to the Plaintiff. The Fifth count alleged common law fraud under New Jersey law. The sixth count alleged a claim for breach of a special relationship under New Jersey law and largely mirrored the other claims. Finally, the Complaint alleged a cause of action for breach of contract in regard to the agreement to repay the American Express card charges.

From the beginning, Mr. Corbett evaded service, as all known addresses for him turned out to be dead ends. Process was served on his mother at her home in Mount Vernon, New York after investigation led to the conclusion that Mr. Corbett lived with his mother. Initially, default was entered on July 15, 2021 by the Clerk and Plaintiff moved for final judgment by default (ECF #6). Judge McNulty raised certain concerns about service and the allegations as to Mr. Corbett's residence and denied the entry of default judgment. (ECF #7). Judge McNulty permitted the filing of an amended complaint, which was filed on October 25, 2021 (ECF #8). The amended complaint clarified that the events primarily occurred in Jersey City and that Mr. Corbett apparently lived in Mount Vernon with his mother. The substance of the allegations, however, remained unchanged.

Unable to locate Mr. Corbett, even after hiring a private investigator and attempting service at several potential addresses, the Plaintiff moved for permission to serve on Corbett by alternative means (at that point, Plaintiff believed that service was properly completed on Catalyst) (ECF #10). Magistrate Clark denied the motion for alternative service, seeking additional proof that the proposed alternative service would be effective in notifying Mr. Corbett of the claims against him.

(ECF #11).  Plaintiff then was forced to subpoena Meta Platforms, Inc. to confirm that Mr. Corbett maintained active accounts, and provided that information in a subsequent motion to the Court.

Upon receipt of that information, Plaintiff filed another motion for service by alternative means.  (ECF #16).  Magistrate Clark entered an order permitting service by alternative means on both defendants (deeming service on Catalyst as ineffective), in accordance with both the Federal Rules of Civil Procedure and the New Jersey Rules of Court governing alternative service.  (ECF #17).  Proof of completion of service by the alternative means was submitted by Declaration of counsel on September 15, 2023.  It demonstrated that the service was completed by email, Facebook messenger and Whatsapp and that Whatsapp indicated that the messages had been received and read.  (ECF #18).

On November 26, 2023, Plaintiff again requested entry of a clerk's default, which was entered on November 27, 2023 (ECF #19).  Plaintiff again sought entry of default judgment on December 7, 2023, which was denied by the Court on June 6, 2024 (ECF #22), requesting that the Plaintiff delineate the issues being briefed in this memorandum of law.

It should be noted that throughout this action, Catalyst maintained a website that was updated during the pendency of the action and that documents were regularly mailed via certified mail to both its listed address in New York City and another address in Miami.  Both were regularly returned to Plaintiff's counsel's office as undeliverable.  The New York office apparently never reopened after the COVID 19 pandemic, based on information provided by the Plaintiff's process server.

### 4. Legal Argument
#### a. Personal Jurisdiction

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) quoting *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)).  "Since New Jersey's long-arm statute allows "the exercise of personal jurisdiction to the fullest limits of due process," we "look to federal law for the interpretation of the limits on in personam jurisdiction." *id.* quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).  This Court has specific personal jurisdiction over Mr. Corbett.  "[W]here the defendant deliberately has engaged in significant activities within a State, ... has created continuing obligations between himself and residents of the forum, ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2184, 85 L.Ed.2d 528, 543 (1985) (internal quotation marks omitted).  Assuming Plaintiff's allegations as true, the Amended Complaint alleges that Mr. Corbett entered into a personal relationship with Ms. Menon and frequented her apartment in Jersey City.  He used those occasions to ask her for funds and to make various fraudulent representations about the use of the funds.  Similarly, he communicated with Ms. Menon, a resident of New Jersey, by phone, text and whatsapp to continue his fraudulent scheme, knowing that she was located in New Jersey and a resident of New Jersey.  This pattern of conduct justifies the exercise of personal jurisdiction over Mr. Corbett by this Court.  Ms. Menon also wired her funds for the investments from her home in Jersey City.

These facts also justify venue in this district. 28 U.S.C. § 1391(b)(2) provides that venue is proper in a judicial district in which a substantial part of the events occurred in the district. As detailed above, the events largely occurred in Ms. Menon's Jersey City Apartment.

### b. Subject matter jurisdiction

As this matter arises under Federal law, the Court has subject matter jurisdiction over the claim. The claim for securities fraud alleges numerous statements made by Corbett to convince Ms. Menon to invest money with his fund and to avoid any explanation of where the funds went. The fact that the money has simply disappeared and there is no way of knowing if he ever in fact invested the funds he had solicited, this is a straightforward case for securities fraud. As such, the Court has subject matter jurisdiction over this Federal question, pursuant to 28 U.S.C. § 1331. The state law cause of actions are properly before this court pursuant to 28 U.S.C. § 1367 providing for supplemental jurisdiction over state law claims. Furthermore, while not specifically alleged in the complaint, there is also complete diversity between the parties, as Corbett is domiciled in New York, Menon is domiciled in New Jersey and Catalyst is an LLC of which Corbett is the sole member and thus is also a resident of New York.

### c. Proof of service

As set forth in the discussion of the procedural history of this matter, service was difficult in this matter and was ultimately completed in accordance with the orders of Magistrate Judge Clark. As discussed at length in Judge Clark's orders (ECF #11 and 17); Plaintiff diligently sought to locate Mr. Corbett and proposed alternative service in a way that was designed to ensure that Mr. Corbett did in fact receive notice of the action (and through him Catalyst). As set forth in Counsel's declaration (ECF #18), the Court's order was followed as to effectuating service, and at least one of the methods generated a read receipt indicating that Mr. Corbett had in fact read the message.

Service has thus been completed in accordance with Fed. R. Civ. P. 4(e)(1) which incorporates service under the New Jersey Rules of Court. Pursuant to NJ Court R. 4:4-4(b)(3), service may be effective as provided by Court order, consistent with due process of law. As service was effectuated in accordance with the orders of this Court, it is compliant with the above cited rules and is effective.

### d. Sufficient Causes of Action Were Stated

#### a) Count Three (Conversion)

Under New Jersey law, conversion is defined as the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Meisels v. Fox Rothschild LLP, 240 N.J. 286, 304, 222 A.3d 649, 660 (2020). "[I]ntentional or negligent acts can give rise to a conversion cause of action." Lembaga Enters., Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J. Super. 501, 507, 727 A.2d 1026, 1029 (App. Div. 1999). "The tort of conversion developed historically with respect to chattels, but it has also been applied to money." Chi. Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 454, 978 A.2d 281, 287 (Super. Ct. App. Div. 2009). The money must "have belonged to the injured party and that it be identifiable, but the money need not be the identical bills or coins that belong to the owner." ibid.

The allegations in the complaint support the allegations of a claim of conversion. The complaint details the Plaintiff's relationship with Mr. Corbett, Am. Compl. ¶8, 9, 11, his statements to Plaintiff to induce her to "invest" money with him, Am. Compl. ¶17-18; that the funds were to be invested in Defendant Catalyst's hedge fund, but in fact were stolen by Corbett; Am. Compl.

¶21-22.  Further the complaint alleges that the funds were in Mr. Corbett's control (and by extension that of his company, Catalyst) and that Ms. Menon requested the return of her funds on numerous occasions, and that Corbett claimed he would return the money but never did so.  Am. Compl. ¶23-28.  The complaint alleges these claims against both Corbett and Catalyst as Corbett specified that he was taking the funds for his company, Catalyst, but ultimately ran off with the money.  Am. Compl. ¶13, 22; 48.

These allegations support the claim of conversion in that Mr. Corbett took possession of the Plaintiff's funds, a sum certain of $100,000 with the claim that the funds would be invested with his company, Defendant Catalyst.  Mr. Corbett then exercised wrongful control over the funds that he allegedly placed in an investment account, and refused to return the funds.  The claims are alleged against both defendants as Corbett used Catalyst and Catalyst received the funds by wire transfer from Ms. Menon, as set forth in her declaration at Exhibit A.

### b)  Count Five (Common Law Fraud)

"To establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73, 876 A.2d 253, 260 (2005) quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997).  Each of these elements is satisfied as to Mr. Corbett.  Catalyst is liable for the fraud of Mr. Corbett under a respondeat superior theory.  "An employee's conduct is deemed to be within the scope of employment if the conduct: (1) is of the kind he/she was employed to perform; (2) occurred substantially within the authorized time and space limits; and (3) was actuated, at least in part, by a purpose to serve employer. Siemens Bldg. Techs., Inc. v. PNC Bank, N.A., Civil Action No. 02-868 (KSH), 2005 U.S. Dist. LEXIS 32251, at *5 (D.N.J. June 24, 2005)

The facts alleged in the complaint certainly support the fraud claim.  The complaint sets forth a detailed listing of conversations between the Plaintiff and Mr. Corbett where he pressured her to invest money in his hedge fund.  Am. Compl. ¶9-22.  He misrepresented the nature of the alleged investment.  Am. Compl. ¶25 and ¶35 (detailing the conflicting claims of the nature of the investment strategy).  He represented that the investment was safe and that Ms. Menon had nothing to worry about.  Am. Compl. ¶ 17-18.  The complaint further alleges that Corbett lied about making any investments and simply ran off with the money. Am. Compl. ¶22, 36; 48.  Ms. Menon has pleaded her claim that she relied on the representations of Mr. Corbett as to the safety of the investment.  Am. Compl. ¶11-15; 57.  Similarly, the Plaintiff has alleged that the statements were false, Am. Compl. ¶58, as the funds were never invested and were simply stolen by Mr. Corbett.

Corbett is the principal of Catalyst and used Catalyst as a part of his schemes.  Am. Compl. ¶6.  Catalyst is also, however, essentially, in a position of employer to Corbett.  Corbett was acting in his capacity with Catalyst to raise funds for its fictitious hedge fund.  His lies were in the scope of his duties to Catalyst, and therefore, Catalyst is responsible for the fraudulent acts of Corbett.

### c)  Count Seven (Breach of Contract)

The Plaintiff alleged the breach of contract claim in regard to Catalyst accepting the funds and then failing to return them or otherwise provide any information as to what occurred with Plaintiff's money.  Am. Compl. ¶ 19-28.  New Jersey "law imposes on a plaintiff the burden to prove four elements: first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a 'breach of the contract'; and fourth, that defendants'

breach, or failure to do what the contract required, caused a loss to the plaintiffs." Globe Motor Co. v. Igdalev, 225 N.J. 469, 482, 139 A.3d 57, 64 (2016) (internal quotation marks omitted).

The failure of Corbett and Catalyst to return the funds also constitutes a breach of the parties' agreement. Am. Compl. ¶73. The complaint finally alleges that the Defendants have caused harm to Ms. Menon in the amounts that were not properly repaid.

### e. Measure of Damages

Plaintiff is entitled to damages in the amount of $100,000, as set forth in Plaintiff's accompanying declaration. Plaintiff is also entitled to an award of prejudgment interest pursuant to New Jersey Court R. 4:42-11(b), which provides for prejudgment interest from the date of the institution of the action in tort cases. "Under New Jersey law, "the award of prejudgment interest on contract and equitable claims is based on equitable principles" and is within the trial court's discretion." *Werremeyer v. Shinewide Shoes, Ltd.*, Civil Action No. 19-10228 (GC) (JBD), 2023 U.S. Dist. LEXIS 228320, at *2 (D.N.J. Dec. 22, 2023). The equities here provide that even on the contract piece of the case, Plaintiff is entitled to prejudgment interest. Plaintiff was simply a victim of a scam by an unscrupulous individual who abused their romantic relationship to execute a fraudulent scheme.

Plaintiff is also entitled to punitive damages on her state law claims. The conduct was willful, wanton and without regard to Ms. Menon's suffering. There is no doubt that Ms. Menon's proofs are sufficient to meet her burden of proof of clear and convincing evidence, as required by N.J.S.A. §N.J.S.A. 2A:15-5.10 and 5.12. Mr. Corbett's conduct was the definition of malice. His schemes involve seduction of women to convince them to invest in his fake hedge fund. All of the factors delineated by N.J.S.A. § 2A:15-5.12(b) are present. Corbett was well aware of the harms he was imposing, Ms. Menon told him on numerous occasions. Mr. Corbett's conduct simply was intended to defraud the plaintiff. Similarly, Mr. Corbett attempted to conceal his theft for months with various fake explanations. Courts in this district have granted punitive damages on default judgment in regard to fraud claims. " *See* Stanhope v. Bank of Am., N.A., No. 1:16-cv-02040-NLH-JS, 2016 U.S. Dist. LEXIS 155431, at *13 (D.N.J. Nov. 9, 2016).

The fact that there is evidence that Mr. Corbett has executed this scheme against others, and has evaded service in this action, and refused any attempt to bring him to account also justifies the imposition of substantial punitive damages. Plaintiff suggests punitive damages of $200,000, which would be double the fake investment to penalize and deter further fake investment schemes by the Defendant. To the extent that the Court wants a hearing on any aspect of damages, Plaintiff is absolutely happy to appear and testify.

### a. Default Judgment Is Proper

"Once entry of default has been obtained, and a party has moved for default judgment, the Court considers four factors in determining whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; (3) whether defendant's delay is due to culpable conduct; and (4) the effectiveness of alternative sanctions." *Nat'l Specialty Ins. Co. v. Papa,* No. 11-2798 RMB/KMW, 2013 U.S. Dist. LEXIS 66019, at *4 (D.N.J. May 9, 2013). These factors militate in favor of granting the instant application.

#### a) Defendants Do Not Have Any Meritorious Defense

As is apparent from the above discussion, the Defendants simply have no meritorious defense to the claims in this action. Mr. Corbett entered into a romantic relationship with the Plaintiff and abused that relationship to pressure her into investing in his apparently fictitious

hedge fund, Catalyst. He never provided any proof of any investment being made on her behalf, or any details as to the securities purchased or provided any account statements or other information. While making vague statements of gains, he never provided any profits, and never returned any of the money. On these facts, there simply is no defense to his conduct.

### b) Plaintiff Has Suffered Prejudice

The Plaintiff has suffered substantial prejudice as her funds were stolen years ago, and she is has been seeking to collect them from the Defendants for several years. The inability to seek out Mr. Corbett's assets for judgment collection, when he has simply disappeared with her money over several years is clearly prejudicial to Plaintiff, who has been forced to expend substantial sums to simply effectuate service on Mr. Corbett and Catalyst. "Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." Coach, Inc. v. Fashion Paradise, LLC, No. 10-4888 (JBS/KMW), 2012 U.S. Dist. LEXIS 7429, at *16 (D.N.J. Jan. 20, 2012)

### c) Defendants Are Culpable

The Defendants' delay in this matter is patently culpable. Mr. Corbett avoided service, despite being tracked down to living with his mother in Mount Vernon, along with the hiring of a private investigator. He further ignored the alternative service in the matter, despite the fact that the messages were received and reviewed by him. Despite numerous applications for default and default judgment, Corbett and Catalyst have simply ignored the matter, and deprived the Plaintiff of any opportunity to resolve this claim on the merits.

### d) There are no Alternative Sanctions

Despite years long efforts to obtain a return of Plaintiff's funds, and to effectuate service, and then after finally effectuating alternative service, the Defendants have simply ignored this Court and the legal process served upon them. This is on top of the fact that the Defendants have engaged in outright and utter fraud. There is no alternative. Default judgment should be entered.

### 5. Conclusion

For these reasons, the Court should grant default judgment in the amount of $100,000 in damages, $200,000 in punitive damages, and prejudgment interest from the date of April 16, 2021.

                                                              /s/ Avram E. Frisch
                                                                   Avram E. Frisch