Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DEVI RAJSHRI SETHUMADHAVA MENON,** | |
| **Plaintiff,** | Civil Action No.: 21-08384 (ES) (JBC) |
| **v.** | **OPINION** |
| **WARD CORBETT and CATALYST PARTNERS MANAGEMENT LLC,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Devi Rajshri Sethumadhava Menon's ("Plaintiff") motion for default judgment against Defendants Ward Corbett ("Corbett") and Catalyst Partners Management LLC ("Catalyst"). (D.E. No. 27). The motion is unopposed. The Court has carefully considered Plaintiff's submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** Plaintiff's motion **IN-PART**.

## I.    BACKGROUND[1]

Plaintiff, an individual who resided in Jersey City at the time of the events giving rise to this action, invested with Defendants Corbett and Catalyst after Corbett repeatedly urged her to do so. (Am. Compl. ¶¶ 5–8). Plaintiff alleges that Corbett is the principal of Catalyst. (*Id*. ¶ 6). Plaintiff further alleges that both Corbett and Catalyst are domiciled in New York. (*Id*. ¶ 7).

---

[1] The Court has drawn the background described herein from Plaintiff's Amended Complaint, (D.E. No. 8 ("Am. Compl.")), as it must accept Plaintiff's factual allegations—other than those related to damages—as true by virtue of Defendants' default. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 820 (D.N.J. 2021).

Plaintiff and Corbett began a romantic relationship in 2019. (*Id.* ¶ 8). In July 2019, Corbett began asking Plaintiff to invest in his hedge fund, Defendant Catalyst, and Plaintiff initially resisted his overtures. (*Id.* ¶¶ 11–12). Corbett pressured her to invest multiple times over the following months, (*id.* ¶¶ 13–20), and that "constant pressure" eventually led Plaintiff to give Corbett $10,000 on September 23, 2019. (*Id.* ¶ 21). Plaintiff ultimately gave Corbett a total of $100,000. (*Id.*). She believed those funds were for investment with Catalyst, but Corbett instead kept them for use on personal expenses. (*Id.* ¶ 22). Plaintiff inquired about her investment on three separate occasions: January 16, 2020, February 4, 2020, and March 6, 2020. (*Id.* ¶¶ 23–25). In response to each request, Corbett reassured her that her investment was doing well. (*Id.*). In October 2020, Plaintiff "asked to withdraw her money, and Corbett continually demurred," (*id.* ¶ 27), before asking for more money. (*Id.* ¶ 27). Corbett also repeatedly represented that he would return Plaintiff's money, but he never actually did so. (*Id.* ¶ 28).[2]

## II.    PROCEDURAL HISTORY

Plaintiff filed the original Complaint on April 6, 2021, (D.E. No. 1), asserting seven counts against Defendants: (i) Securities Fraud; (ii) violations of the New Jersey Uniform Securities Law; (iii) Common Law Conversion; (iv) Accounting; (v) Common Law Fraud; (vi) Breach of a Special Relationship; (vii) and Breach of Contract. (*See generally id.*). On July 15, 2021, the Clerk of the Court entered defaults against Defendants at Plaintiff's request. (D.E. No. 5). Plaintiff then filed an initial motion for default judgment against Defendants on August 20, 2021. (D.E. No. 6). By Order dated October 8, 2021, the Hon. Kevin McNulty, U.S.D.J., denied that motion, citing

---

[2] Plaintiff also alleges that Corbett charged business expenses "to a shared American Express Card, with the understanding that Corbett would pay the full card." (Am. Compl ¶ 29). Plaintiff contends that Corbett failed to repay a significant portion of those charges, thereby incurring "substantial interest" on the account. Plaintiff no longer seeks recovery with regard to the American Express charges, however. (D.E. No. 27-8 ("Mov. Br.") at 2 (ECF pagination)).

concerns regarding the propriety of venue and the adequacy of service, and granted Plaintiff leave to amend her pleading to allege additional venue-related facts.  (*See generally* D.E. No. 7).

On October 25, 2021, Plaintiff filed an Amended Complaint asserting the same seven causes of action.  (Am. Compl.).  While the salient facts underlying her claims remained largely unchanged, Plaintiff provided additional information relevant to venue.  (*See generally* Am. Compl.).  For instance, Plaintiff clarified that the fraudulent statements and the wiring of funds at issue in the case took place in her Jersey City apartment and that she never went to Defendant Corbett's New York home.  (Am. Compl. ¶¶ 4, 10).  Additionally, Plaintiff alleged that Defendant Corbett lived in Mount Vernon, rather than New York City.  (*Id.* ¶ 6).

On February 14, 2022, amidst ongoing issues with locating Defendants, Plaintiff filed both (i) an affidavit of diligent inquiry in accordance with New Jersey Court Rule 4:4-4(b); and (ii) a motion for leave to effectuate service by alternate means.  (D.E. Nos. 9 & 10).  The Hon. James B. Clark, U.S.M.J., denied that motion by Order dated September 1, 2022, finding that Plaintiff had failed to establish that her proposed means of alternative service—e-mail, Facebook Messenger, and Whatsapp Messenger—were likely to provide Defendants with notice of this litigation.  (*See generally* D.E. No. 11).  Plaintiff filed a renewed motion for alternative service on March 27, 2023, (D.E. No. 16), which Magistrate Judge Clark granted by Order dated August 3, 2023.  (D.E. No. 17).  On September 15, 2023, Plaintiff's counsel filed a Certification representing that he served Defendants via each of the means Magistrate Judge Clark authorized in His Honor's August 3, 2023 Order (i.e., email, Facebook Messenger, Whatsapp Messenger).  (D.E. No. 18).

At Plaintiff's request, the Clerk of the Court entered defaults against Defendants on November 27, 2023.  Plaintiff filed motions for default judgment on December 7, 2023, (D.E. No. 21), and August 26, 2024, (D.E. No. 23), which this Court terminated, without prejudice, so as to

allow Plaintiff to file a new application addressing the various, necessary factors. (D.E. Nos. 22 & 24). Plaintiff filed the instant motion on March 6, 2025. (D.E. No. 27). To date, neither Defendant has responded to that motion or otherwise participated in this case.

### III.    LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting such relief.

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for

the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (citation modified).

## IV.    DISCUSSION

### A.    Jurisdiction

#### i.    Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction over this case.  District courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and that are between citizens of different States.  28 U.S.C. § 1332(a).  A limited liability company maintains the citizenship of each of its members.  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).  The citizenship of a natural person is determined by the state in which the person is domiciled.  *Id.* at 104.

The record indicates that the Plaintiff is an individual residing in New Jersey, with an address at 110 1st St. in Jersey City.  (Am. Compl. ¶ 5).  The Defendants, Corbett and Catalyst, of which Corbett is the sole member, are both domiciled in New York.  (Am. Compl. ¶¶ 6–7).  There is, therefore, complete diversity between Plaintiff and all Defendants.

Plaintiff alleges that the amount in controversy is at least $100,000.  (*Id.* ¶ 21).  Given that there is complete diversity of citizenship between Plaintiff and both defendants, and that the amount in controversy exceeds $75,000, the Court finds that it has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

#### ii.    Personal Jurisdiction

The Court next finds that it may exercise personal jurisdiction over Defendants.  Effective service of process is the mechanism by which the court itself obtains personal jurisdiction over a defendant.  *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) ("A court obtains personal

jurisdiction over the parties when the complaint and summons are properly served upon the defendant.").  As shown below, the Court finds that Plaintiff properly effected personal service on both Corbett in his personal capacity and in his role as the principal of Catalyst.  (D.E. No. 18 & Exs. A–C).  Additionally, Defendants' connections with New Jersey constitute sufficient minimum contacts with this forum.  "[W]here the defendant deliberately has engaged in significant activities within a state . . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Here, the activities giving rise to the action occurred in New Jersey, as Defendant Corbett came to this State (both literally and via text message) to meet with Plaintiff and solicit her investment in Defendant Catalyst.  (Am. Compl. ¶ 4).  Moreover, Plaintiff wired funds to Defendants from her home in Jersey City, New Jersey, at Defendant Corbett's request.  (*Id.*).  Defendants are, therefore, subject to "specific" personal jurisdiction in this forum.

### B.    Proper Service

The Court finds that Plaintiff properly effectuated service on Defendants.  Relevant here is Federal Rule of Civil Procedure 4(e)(1), which incorporates methods for service under the New Jersey Rules of Court.  New Jersey Court Rule 4:4-4(b)(3), in turn, authorizes service in accordance with court orders, consistent with due process of law.

Here, given Plaintiff's multiple, diligent attempts to locate Defendants, Magistrate Judge Clark granted her leave to serve Defendants by alternative methods—specifically through Facebook Messenger, WhatsApp Messenger, and e-mail.  (D.E. No. 17).  Plaintiff's counsel filed a Certification representing that he effectuated service in accordance with Magistrate Judge Clark's Order.  (D.E. No. 18).  Plaintiff therefore successfully served Defendants in accordance with Rule 4(e)(1).

## C.    Sufficient Cause of Action

Plaintiff seeks default judgment on three counts of the Amended Complaint: Count Three (Conversion), Count Five (Common Law Fraud), and Count Seven (Breach of Contract).  (Mov. Br. at 5–7 (ECF pagination)).  Plaintiff represents that she "does not seek judgment on the other counts, as recovery on those counts would be duplicative of the fraud, conversion and breach of contract claims."  (*Id.* at 2 (ECF pagination)).  As noted above, she also does not seek relief regarding Defendant Corbett's alleged failure to pay for purchases on a shared American Express credit card.  (*Id.*).  The Court finds that Plaintiff has sufficiently stated claims for conversion and common law fraud against Defendant Corbett.  She has also alleged a plausible fraud claim against Defendant Catalyst.  She has not, however, established a sufficient conversion claim against Catalyst or a viable breach of contract claim against either Defendant.  The Court addresses each cause of action in turn.

Conversion is defined as the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  *Bondi v. Citigroup*, Inc., 32 A.3d 1158, 1190 (N.J. Super Ct. App. Div. 2011) (internal quotation marks omitted).  The elements of conversion are: (i) "the property and right to immediate possession thereof belong to the plaintiff;" and (ii) "the wrongful act of interference with that right by the defendant."  *First Nat'l Bank v. N. Jersey Tr. Co.*, 14 A.2d 765, 767 (N.J. Sup. Ct. 1940).  Here, Plaintiff's allegations support a claim of conversion against Defendant Corbett.  Specifically, she contends that Defendant Corbett misleadingly induced her to give him funds under the guise of making an investment with Defendant Catalyst.  (Am. Compl. ¶¶ 17–21).  She further alleges that Defendant Corbett thereafter stole those funds for his personal use, lied to her about the status of her "investment," and

"continually" ignored her requests that he return the money.  (*Id.* ¶¶ 22–28).  Given Plaintiff's explicit allegation that Corbett stole the money himself, without investing it with Catalyst, (*id.* ¶ 22), however, she has not alleged a plausible conversion claim against Catalyst.

The Court next finds that Plaintiff has established a sufficient claim of common law fraud against both Defendants.  To establish common law fraud, a plaintiff must prove: (i) a material misrepresentation of a presently existing or past fact; (ii) knowledge or belief by the defendant of its falsity; (iii) an intention that the other person rely on it; (iv) reasonable reliance thereon by the other person; and (v) resulting damages.  *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).  Plaintiff alleges that Defendant Corbett intentionally misrepresented both the nature and potential risk of the Plaintiff's investment, as well as the status of her funds post-"investment." (Am. Compl. ¶¶ 9–20 & 23–25).  Plaintiff alleges that she relied on Corbett's representations when she initially gave him the funds, thereby suffering damages.  (*Id.* ¶¶ 21 & 56).  Plaintiff has therefore alleged a plausible fraud claim against Defendant Corbett.  Moreover, given Corbett's status as the "principal" of Defendant Catalyst, the Court may reasonably infer from Plaintiff's allegations that Corbett made those representations both in his personal capacity and on behalf of Catalyst.

Finally, the Court finds that Plaintiff has not alleged a sufficient breach of contract claim against Defendants with regard to her investment funds.[3]  The elements of a cause of action for breach of contract under New Jersey law are: (i) a valid contract; (ii) a breach by the defendant; and (iii) resulting damages.  *See, e.g.*, *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985).  Here, Plaintiff alleges that she "understood the transaction to be akin to a loan"

---

[3]        In her Amended Complaint, Plaintiff based her breach of contract claim on *both* (i) her investment with Defendants; and (ii) Defendant Corbett's alleged failure to repay charges that he incurred on a specific American Express account.  (*Id.* ¶¶ 69–75).  As Plaintiff does not pursue judgment on the American Express-related claim, the Court will not analyze it herein.

and that Defendants breached a duty by "taking the money and failing to return it upon demand." (Am. Compl. ¶ 69).  Putting aside the fact that these conclusory allegations are obviously at odds with Plaintiff's allegations that she believed she had invested money with Defendants, (*compare id. with id.* at ¶¶ 9–26), the Court finds that Plaintiff has nevertheless failed to establish that she entered into any specific agreement with Defendants.

### D.    Propriety of Default Judgment

The Court next finds that it would be appropriate to enter default judgments against Defendants.  To determine whether granting default judgment is proper, the Court must make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).  Here, Defendants have never appeared, let alone responded to the Complaint or the Amended Complaint, and thus nothing in the record suggests that either might have a meritorious defense against Plaintiff's claims.  *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense.").  Moreover, Defendants' failure to participate in this case has prejudiced Plaintiff, as it has prevented her from otherwise resolving this case on the merits and significantly delayed her efforts to recover her funds.  *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm caused by [the d]efendant").

Finally, with respect to whether Defendants' default was the result of their culpable conduct, the Court finds that nothing in the record indicates that Defendants' failure to participate

in this case has been due to anything other than their own willful conduct. *See, e.g.*, *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (noting that the defendant is culpable when nothing suggests that anything other than the defendant's willful negligence caused the failure to answer). Based upon the foregoing, the Court finds that it would be appropriate to issue a default judgment in this case.

### E.    Damages

The record reflects that Defendants caused Plaintiff actual damages of $100,000, which is the amount Plaintiff gave to Mr. Corbett for the faux investment. (D.E. No. 27-4 ¶ 9). The Court therefore finds that Plaintiff is entitled to compensatory damages in that principal amount. The Court further finds that, as Defendants cause those damages via intentional torts, Plaintiff is entitled to an award of prejudgment interest running from the date she commenced this action. *See* N.J. Ct. R. 4:42-11(b).[4] While the Court has discretion to determine whether to impose prejudgment interest under New Jersey Court Rule 4:42-11(b), *see e.g.*, *Kotzian v. Barr*, 408 A.2d 131, 133 (N.J. 1979), the Court finds that such an award would be equitable in this case. Prejudgment interest will be calculated—based on the $100,000 principal amount—from April 6, 2021 (the date Plaintiff commenced this action), through the date of judgment.

Plaintiff is also entitled to punitive damages regarding her conversion (as to Defendant Corbett) and fraud (as to both Defendants) claims. New Jersey law authorizes punitive damages when a defendant's wrongful conduct was willful and wanton. N.J.S.A. § 2A:15-5.10 (punitive damages are appropriate when a defendant commits "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences

---

[4]    As this case arises under the Court's diversity jurisdiction, the Court must apply state law when determining the propriety and amount of prejudgment interest. *See, e.g.*, *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982) (federal courts sitting in diversity should apply state law with respect to pre-judgment interest).

of such act or omission"); *see also Bestherb, Inc. v. Yinlink Int'l Inc.*, No. 22-6548, 2024 WL 3898039, at *7 (D.N.J. Aug. 22, 2024) (collecting cases). Indeed, judges in this District have found it appropriate to award punitive damages in fraud cases, *Vibra-Tech Eng'rs, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 500 (D.N.J. 2012) (awarding punitive damages in connection with a fraud claim after finding that N.J.S.A. §§ 2A:15-5.10 and 5.12 were met), including in the default judgment context, *see Stanhope v. Bank of Am., N.A.*, No. 16-2040, 2016 WL 6645770, at *5 (D.N.J. Nov. 9, 2016). Here, taking Plaintiff's factual allegations as true, the record reflects that Defendants deliberately defrauded her, fully cognizant of the fact that she was fearful of the prospect of an investment (given her history of losing $75,000 in a prior deal), took advantage of her romantic feelings for Defendant Corbett, and acted without any regard for the consequences Plaintiff would suffer. (Am. Compl. ¶¶ 8–28). Defendant Corbett acted with similar malice when he converted Plaintiff's funds for his personal use.

Having found that an award of punitive damages is appropriate here, the Court must next determine the appropriate *amount* for that award. Plaintiff proposes punitive damages in the amount of $200,000, which would be a 2:1 ratio to her actual damages. (Mov. Br. at 7 (ECF pagination)). In conducting this analysis, the Court remains mindful of the constitutional limits on punitive damages that the Supreme Court outlined in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). Specifically, the Court notes the Supreme Court's guidance that the degree of reprehensibility of a defendant's conduct is seen as the "most important indicium" of the reasonableness of punitive damages. (*Id*. at 575) (indicating that even a purely economic injury can justify punitive damages "when done intentionally through affirmative acts of misconduct" or "when the target is financially vulnerable"). The Supreme Court further noted that "[t]he second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages

award is its ratio to the actual harm inflicted on the plaintiff." *Id.* at 580.  Considering its prior

decisions, the *BMW* Court observed that, while there is no "simple mathematical formula" for

determining an appropriate ratio, "[i]n most cases, the ratio will be within a constitutionally

acceptable range, and remittitur will not be justified on this basis." *Id.* at 582–83.  In providing

that guidance, the Supreme Court cited with approval punitive damages awards with ratios of 4:1

and 10:1, respectively.  *Id.* at 581 (first citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24

(1991); then citing *TXO Prod. Corp. v. All. Res. Corp*., 509 U.S. 443, 460 (1993)).  The *BMW*

Court clarified, however, that "[w]hen the ratio is a breathtaking 500 to 1, however, the award

must surely 'raise a suspicious judicial eyebrow.'"  *Id.* at 583 (citing *TXO Prod. Corp.*, 509 U.S.

at 481)).[5]

Here, the Court finds that Defendants' conduct was purposeful, involved ongoing

misrepresentations and efforts of concealment, and preyed on Plaintiff's affection for Defendant

Corbett.  That conduct is plainly reprehensible.  In turn, the Court finds that Plaintiff's proposed

punitive damages award of $200,000—a 2:1 ratio vis-à-vis her actual damages—is both

constitutionally sound and appropriate in the context of this case.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment

against the Defendants **IN-PART**.  Specifically, the Court finds that Plaintiff is entitled to a default

judgment against the Defendants on the conversion and common law fraud claims (Counts Three

and Five).  The Court finds that Plaintiff is entitled to award of compensatory damages in the

principal amount of $100,000 (plus prejudgment interest on that amount as permissible under New

---

[5]      The *BMW* Court noted that the "third indicium of excessiveness" is the "civil penalties that could be imposed" under state law "for comparable misconduct."  *Id.*  As noted above, New Jersey statutory law specifically permits awards of punitive damages in cases of willful and wanton behavior.  Having already found that an award of punitive damages is appropriate under New Jersey statutory law, the Court need not analyze this issue again.

Jersey law from April 6, 2021—the date Plaintiff commenced this action—through the date of judgment), as well an award of punitive damages in the amount of $200,000. The Court will therefore enter judgment, in Plaintiff's favor and against both Defendants, in that amount. As the Court agrees with Plaintiff's representation that the damages associated with her other causes of action would be duplicative of the damages awarded herein, the Court will dismiss those claims and direct the Clerk of the Court to close this case. An appropriate order follows.

Date:  December 30, 2025

_s/ Esther Salas_____
**Esther Salas, U.S.D.J.**

Cc:    Hon. James B. Clark, U.S.M.J.